UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| BETH JORDAN<br>    *Plaintiff*, | )<br>)<br>) |
| v. | )    Case No. 1:16-cv-00023-DCLC-CHS<br>)<br>) |
| RELIANCE STANDARD LIFE<br>INSURANCE COMPANY,<br>    *Defendant*. | )<br>)<br>) |

## REPORT AND RECOMMENDATION

**I.    Introduction**

Plaintiff Beth Jordan moves for attorney fees pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(g)(1). [Motion for Attorney Fees, Doc. 133]. The District Court has referred this motion to this Court under 28 U.S.C. § 636(b)(1)(B) and (C) for a report and recommendation. Having reviewed the record and considered argument of the parties, it is **RECOMMENDED** that Plaintiff's motion be **GRANTED IN PART** and **DENIED IN PART**, and that Plaintiff be awarded attorney fees and paralegal fees in the amount of $51,953.75

**II.    Background**

On October 15, 2009, Plaintiff began to receive disability benefits pursuant to an employee welfare benefit plan (the "Plan") administered by Defendant Reliance Standard Life Insurance Company ("Reliance") after becoming disabled due to Lyme disease. [Doc. 114, Second Order remanding case for further administrative review[1] at Page ID # 3951[2]]. On October 15, 2015, Reliance discontinued Plaintiff's benefits after finding that she no longer met the definition of

---

[1] For purposes of brevity, the Second Order Remanding Case for further administrative review hereinafter will be referred to as "the Second Remand Order."
[2] Page ID #'s are those numbers electronically assigned sequentially to every page of every document filed in the electronic court record.

1

disabled under the Plan. [*Id.* at 3951-52]. On November 3, 2015, Plaintiff appealed this decision administratively to Reliance. [Doc. 91, First Order Remanding Case for further administrative review at Page ID # 2420].[3] Reliance exercised its right under the Plan to require Plaintiff to undergo an independent medical examination ("IME"). [First Remand Order at Page ID # 2420]. An IME was scheduled but, at the last minute, the independent medical examiner had to cancel the exam. Further attempts to schedule the IME were unsuccessful, and, on February 5, 2016, Plaintiff filed suit in this Court under 29 U.S.C. § 1132(a)(1)(B). [*Id.* at 2421]. Finding that Plaintiff must exhaust her administrative remedies before filing suit, the District Court remanded the case to Reliance for completion of the IME and further administrative review. [First Remand Order at Page ID # 2421, 2430].[4]

Upon remand, an IME was conducted and, subsequently, Reliance granted Plaintiff an additional nine and a half months of benefits up to July 31, 2016; however, Reliance found Plaintiff was not disabled during the remaining period of time for which Plaintiff sought benefits, *to wit*, August 1, 2016, to September 18, 2017. [Second Remand Order at Page ID # 3954, 3957].

Plaintiff then filed an appeal to this Court concerning Reliance's decision denying benefits from August 1, 2016, to September 18, 2017. On May 8, 2020, the District Court entered its second order remanding this case to Reliance for further proceedings on the ground that Reliance had failed to give her a fair and full review of her claim. [Doc. 114, Second Remand Order]. In its decision, the District Court focused on: (1) the opinion of the physician who conducted the IME

---

[3] This First Order Remanding Case for further administrative review hereinafter will be referred to as "the First Remand Order."

[4] Under certain circumstances, if a plan administrator fails to provide a decision to a claimant within the 45 day time line established by ERISA regulations, the claimant may properly file suit in federal court. The action is then "deemed exhausted" and the court must construe the administrator's untimeliness as a denial of benefits. [*See* Doc. 91, First Remand Order at Page ID # 2422-23; 29 C.F.R. §§ 2560.503-1(i)(l)(i), (i)(3)(i), (*l*)(2)(i)]. In the First Remand Order, the District Court held, for various reasons, that Plaintiff had not exhausted her administrative remedies, and remanded her claim for further review by Reliance. [*See* First Remand Order].

(the "Examiner") who opined that she could work full-time from August 1, 2016, onward; and (2) the opinion of Plaintiff's treating physician that she was disabled up to September 18, 2017.

As to the Examiner, the District Court made several findings: First, the Examiner relied heavily on his assumptions about the number of hours Plaintiff worked each week after August 1, 2016, to opine that she was not disabled as of August 1, 2016. [*Id.* at Page ID # 3961-64]. Second, the Examiner failed to consider Plaintiff's personal statement attesting that the number of hours she was working were *not* consistent with the Examiner's assumptions. [*Id.* at Page ID ##3961-64]. Third, Reliance relied in part on the Examiner's opinion in denying Plaintiff's claim for benefits after August 1, 2016. [*Id.* at Page ID # 3965, n. 8]. The District Court concluded,

> [Reliance] provided no explanation for its handling of Jordan's clarified academic schedule. Although there may have been a reasonable justification for determining that Jordan's schedule did not demonstrate that she was "totally disabled," [Reliance's] failure to address this relevant evidence supports the conclusion that it did not conduct a full and fair review of its denial.

[*Id.* at Page ID # 3965].

As to the treating physician, the District Court found that Reliance failed to explain why it credited the opinion of two non-examining physicians who simply reviewed Plaintiff's file over the opinion of her treating physician. The non-examining physicians had opined that Plaintiff was able to work full-time from August 1, 2016, onward. The Court stated that, while Reliance "gave controlling weight to the file reviewers' opinions and apparently no weight to [the treating physician's] opinion," "[Reliance] offered no . . . reason for adopting the file reviewers' opinions over those of Jordan's treating physician. Its failure to do so was arbitrary and denied Jordan the 'full and fair review' to which she was entitled." [*Id.* at Page ID # 3966]. The District Court also found, for various reasons, that the file reviewer's opinions were "inadequate for [Reliance] to rely on in reaching its decision." [*Id.*]. The Court concluded "because Defendant failed to give any

3

reason for rejecting [the treating physician's] opinion, and as the opinions it relied on 'were inadequate in critical respects,' the Court concludes that Defendant's final denial was arbitrary and capricious." [*Id.* at Page ID # 3967].

Summarizing the reasons for remand, the District Court stated, "[t]he underlying flaw in Defendant's denial 'is with the integrity of [its] decision-making process.'" The District Court remanded the case to Reliance for further administrative proceedings. [*Id.* at Page ID # 3968].

Following the second remand and further review of Plaintiff's claim, Reliance determined again that Plaintiff ceased being disabled as of August 1, 2016, a decision for which Plaintiff again sought review in this Court. Denying Plaintiff's motion for judgment on the administrative record and granting Reliance's motion, the District Court affirmed Reliance's decision and entered judgment in favor of Reliance on February 23, 2022. [Doc. 130, Memorandum & Opinion; Doc. 131, Judgment]. Plaintiff timely filed this motion for attorney fees on March 25, 2022.

**III.    Analysis**

Pursuant to 29 U.S.C. § 1132(g), this Court has discretion to award a reasonable attorney fee to either party. 29 U.S.C. § 1132(g); *see also McKay v. Reliance Standard Life Insurance Co.*, 428 F. App'x 537, 545 (6th Cir. 2011). The Court uses a two step process when reviewing a request for attorney fees. *See Ciaramitaro v. Unum Life Ins. Co. of America*, 521 F. App'x 430, 436 (6th Cir. 2013). As a threshold matter, the Court must determine whether the claimant is *eligible* for fees. *Id.* Second, if the claimant is eligible, then the Court must determine whether to award fees at all, and, if so, how much. At the second step, courts within the Sixth Circuit use the five "*King* factors" set forth in *Secretary of Labor v. King*, 775 F.2d 666 (6th Cir. 1985), though it is not required. *Ciaramitaro*, 521 F. App'x at 437-38 (citing *Hardt, v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010)).

4

### A. Plaintiff is eligible for an award of attorney fees.

In order to be eligible for attorney fees, Section 1132(g) does not require a party to be a "prevailing party" in the traditional sense; rather, the claimant need only show "some degree of success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010). The Supreme Court elaborated on the "some-success-on-the-merits" requirement as follows:

> A claimant does not satisfy that requirement by achieving "trivial success on the merits" or a "purely procedural victor[y]," but does satisfy it if the court can fairly call the outcome of the litigation some success on the merits without conducting a "lengthy inquir[y] into the question whether a particular party's success was 'substantial' or occurred on a 'central issue.' "

*Id.*

In *Hardt*, the district court remanded the plaintiff's claim for further review because the plan administrator had not complied with ERISA guidelines. The district court gave the plan administrator 30 days to conduct an adequate review or, on the basis of "compelling evidence" that plaintiff was disabled, it would enter judgment in favor of plaintiff. Upon remand and further review, the plan administrator concluded the plaintiff was disabled. Under these facts specific to this case, the Supreme Court concluded plaintiff had obtained some success on the merits and was entitled to fees incurred in obtaining a remand. *Id.* at 256. The Supreme Court expressly declined to consider whether a remand by itself was sufficient to support an award of attorney fees pursuant to Section 1132(g). *Id.* ("we need not decide today whether a remand order, without more, constitutes 'some success on the merits' sufficient to make a party eligible for attorney's fees under § 1132(g)(1).")

Jordan argues that she is eligible for attorney fees in this case because she received some success on the merits when the district court remanded the case twice to Reliance for further proceedings. Jordan also notes that after the first remand, she obtained a partial victory in that

5

Reliance paid her disability benefits for an additional nine-and-a-half-month period. Reliance counters with two main arguments: (1) had Jordan not filed her action in district court before the IME took place, Reliance would have granted her the additional benefits after the IME, and the first remand would not have been necessary; and (2) the second remand was a purely procedural victory and does not constitute any success on the merits of her case. The Court will address Reliance's second argument first because it finds the Second Remand Order to be determinative as to the eligibility issue. The Court will then address Reliance's first argument relating to the first remand in step two of this analysis where the Court concludes this argument is more appropriately addressed.

Shortly after *Hardt* was decided, the Sixth Circuit, in *McKay v. Reliance Standard Life Insurance Co.*, 428 F. App'x 537, 546 (6th Cir. 2011), held that a remand alone is sufficient success on the merits to render a claimant *eligible* for attorney fees. In *McKay*, after the plan administrator denied the plaintiff's disability claim, the district court remanded the claim for further investigation based on a determination that the administrator's initial failure to investigate was arbitrary and capricious. *Id.* at 540. Following remand, the administrator again concluded plaintiff McKay was not disabled. The plaintiff filed a motion for attorney fees which was granted. The District Court ultimately determined that the denial of benefits was supported by the administrative record. *Id.* at 540. Upon appeal to the Sixth Circuit, the appellate court affirmed the district court's decision to deny the underlying disability claim but to grant attorney fees. *Id.* at 540, 546-47. *McKay* is the only case in which a panel of the Sixth Circuit has squarely addressed whether a remand alone is sufficient to render a claimant *eligible* for attorney fees under Section 1132(g). The *McKay* Court found that it does, explaining:

> Reliance [the plan administrator] argues in vain that the Supreme Court's decision in *Hardt* supports its position. Reliance is correct that the Court in *Hardt* did not

6

give unlimited authority to courts to award fees under § 1132(g)(1). *Hardt*, 130 S. Ct. at 2158 (reminding readers that a "judge's discretion is not unlimited." (citation omitted)). Instead, it found that § 1132(g)(1) requires a claimant to show "some degree of success on the merits," and not merely a "trivial success on the merits" or a "purely procedural victory." *Id*. (citations and quotation marks omitted). Here, the district court explicitly concluded that McKay's receipt of "another shot" at his claimed benefits was a "success on the merits because his case was remanded for further consideration"; in other words, McKay "achieved some degree of success" by achieving a remand. Indeed, McKay was just like the *Hardt* claimant in that he "persuaded the District Court to find that the plan administrator ... failed to comply with the ERISA guidelines" and that, as a result, he "did not get the kind of review to which [he] was entitled under the applicable law." *Hardt*, 130 S. Ct. at 2159 (internal citation and quotation marks omitted). Reliance's reliance on *Hardt* is misplaced; *Hardt* supports McKay's position.

*McKay*, 428 F. App'x at 546-47 (brackets added); *see also Thies v. Life Ins. Co. of N. Amer.*, 839 F. Supp. 886, 890 (W. D. Ky. 2012) (holding *McKay* expressly holds a remand alone is sufficient to make an award of attorneys fees available under Section 1132(g)), cataloging cases making same determination); *see also Cockrell v. Hartford Life and Acc. Ins. Co.*, No. 11-2149, 2013 WL 2147454, at *2 (W. D. Tenn. May 15, 2017) (relying on *McKay* to hold a remand alone satisfies the some-success-on-the-merits requirement); *Groth v. CenturyLink Disability Plan*, No. 2:13-cv-1238, 2015 WL 1396380, at * 2 (S.D. Ohio Mar. 25, 2015) (same); *Bellefleur v. Hayman Co.*, No. 11-13155, 2013 WL 3771373, at * 3-4 (E.D. Mich. July 17, 2013) (same).

In the instant case, the District Court remanded the case to Reliance because Reliance had failed to provide a full and fair review as required by ERISA. Accordingly, the Court finds that Jordan has met the eligibility requirement for attorney fees under Section 1132(g). The Court will now turn to step two of the analysis of Jordan's motion for attorney fees.

### B. The *King* factors weigh in favor of awarding Plaintiff some, but not all, attorney fees requested.

If a party is eligible for attorney fees under Sections 1132(g), the Court must determine whether to exercise its discretion and grant such fees. In such cases, a district court in this circuit

7

generally turns to the five factors set out in *Secretary of Labor v. King*, 775 F.2d 666 (6th Cir. 1985). *See Ciaramitaro*, 521 F. App'x. at 436-47. The *King* factors are:

> (1) the degree of the opposing party's culpability or bad faith;
> (2) the opposing party's ability to satisfy an award of attorney's fees;
> (3) the deterrent effect of an award on other persons under similar circumstances;
> (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and
> (5) the relative merits of the parties' positions.

*King*, 775 F.2d at 669. The Court will address these factors separately.

### 1. The degree of the Reliance's culpability or bad faith

Plaintiff does not argue that Reliance acted in bad faith in partly denying her claim—nor would the Court make this finding. But Plaintiff does argues that Reliance is "highly culpable," pointing to the shortcomings enumerated by the District Court as the reason for the second remand. In fact, the District Court found there was a fundamental flaw in the *integrity* of Reliance's review of Plaintiff's claim, in that Reliance failed to consider certain evidence, failed to explain its reasons for rejecting evidence, and relied on inadequate evidence to deny Plaintiff's claim. In other words, Reliance failed to give Plaintiff a full and fair review of her claim as required by ERISA. The Second Remand order was entered to correct far more than just a procedural error. Rather, it was entered to correct substantive flaws in Reliance's review of Plaintiff's claim. Consequently, this factor weighs in Plaintiff's favor.

Before moving to the second factor, Reliance made certain arguments relating to this culpability factor which the Court will address. Reliance asserts that Plaintiff, through the actions of her attorney, is the culpable party. According to Reliance, Plaintiff's attorney acted "inappropriate[ly]" and in "bad faith" during the course of this litigation. [Doc. 138, Reliance's Response at Page ID # 4241].

Specifically, Reliance raises the following arguments listed below (a. through d.) to support its claim that that Plaintiff's counsel acted in bad faith:

    a. Plaintiff served "broad discovery on [RSL] seeking 'native format' materials" and "Plaintiff later filed motions to compel," but "none of this information was relied on by the Court to reach any of its decisions." [Doc. 138, Defendant's Response at Page ID # 4211 (brackets added)].

This argument is unavailing for several reasons. Plaintiff was, in fact, largely successful on both of her motions to compel discovery. Further, this Court ordered Reliance to provide electronic discovery in native format pursuant to Fed. R. Civ. P. 34(b)(2)(E)(ii). Moreover, courts generally do not rely on *all* information produced in discovery to reach a decision. Reliance's suggestion that all discovery must be relied upon by a court in its decision—or else a party's efforts to obtain such discovery will be deemed to have been requested in bad faith—is not a rule in this circuit or any other circuit of which the Court is aware. Indeed, Reliance cites no authority for this assertion.

Beyond that, because the Court ordered Reliance to produce the requested emails in native format, Plaintiff's counsel discovered that Reliance had not produced a certain email exchange in its entirety in the first round of production. [Doc. 68, Brandon Cate Aff. ¶¶ 25, 27, Page ID # 2162-63]. The email exchange occurred on February 10, 2016, between Reliance Appeals Supervisor Eileen Brunner and Tiffany Dickerson in Reliance's Quality Review Unit. Dickerson emailed Brunner to inform her of Dickerson's efforts to schedule Plaintiff for an IME (a key issue in the case prior to the First Remand Order). [Doc. 69-1, Page ID # 2175]. Brunner responded in full as follows, "retract and delete this. talk to her. it can be discoverable." [*Id.* (lack of capitalization in original)].

Brunner's response to Dickerson's email was redacted in the first round of production—which was *not* in native format. After receiving this production, Plaintiff filed a motion to compel Reliance (her second) to produce the discovery in *native* format. The Court then directed Reliance

9

a second time to produce the documents in native format. It was through this second round of production in native format that the complete email exchange was obtained.

Concerned about the nature of Brunner's response and the fact that it had been redacted in the first round of production, the Court directed Reliance's counsel to file affidavits explaining why Brunner's email response had been redacted in the first round. Counsel stated that Brunner's response had been redacted in the first round because it was believed to be protected under the attorney-client privilege and that the failure to provide a privilege log was simply an oversight. [Doc. 68, Aff. of Brandon Cate; Doc. 70 Aff. of Joshua Bachrach]. The Court notes that, while Brunner had graduated from a law school, she had no license to practice law in any state. [Doc. 69, Aff. of Eileen Brunner ¶ 2, Page ID # 2172]. According to Reliance's outside counsel, he first became aware of Brunner's response when his client sent him the second discovery production. [Doc. 68, Cate Aff. ¶ 25, at Page ID # 2162-63]. Brunner's response was not redacted from the second production because Reliance did not know how to make redactions from documents produced in native format. [*Id.* ¶ 27, at Page ID # 2163 ("we do not know how to redact out that portion of the e-mail message [Brunner's response] from the electronic record, and we want to abide by the court's ruling that we produce the email in its native electronic format") (brackets added)].

Because Plaintiff did not seek sanctions for Reliance's initial failure to produce the entire Brunner-Dickerson email exchange, the Court took the affidavits at face value and did not hold an evidentiary hearing on the matter. Nevertheless, the Court finds Reliance's complaints that Plaintiff's discovery requests were made "in bad faith" to be tone deaf in light of a Reliance's own questionable conduct in the handling of discovery in this case, *to wit*: (1) a Reliance supervisor's direction to a subordinate to "retract and delete" an email discussing an important issue regarding

the claimant because the email "can be discoverable"; and (2) Reliance's decision not to produce this email until the Court ordered Reliance to produce the emails in a format that prevented Reliance from redacting the email. Plaintiff counsel did not act in bad faith in seeking discovery. Reliance arguably did act in bad faith in the manner in which it responded to discovery.

      b. Plaintiff's counsel maintained a blog which falsely accused Reliance of routinely excluding ERISA claim files for years and of attempting to hide or destroy evidence.

Plaintiff's counsel maintains that the information in his blog is true, and asserts he received an additional 50 emails from the second production that were withheld from the first production. The Court has no evidence before it regarding Plaintiff's receipt of an additional 50 emails that were previously withheld. In any event, this Court previously addressed Plaintiff's counsel's "extrajudicial statements" by denying Reliance's motion to restrict them. [Doc. 89, Order].

      c. Plaintiff's counsel improperly submitted additional evidence to the Court after the Second Remand, even though the District Court directed that no further evidence be submitted after the second remand.

Plaintiff denies that she improperly submitted evidence for the Court's consideration after the second remand. For reasons the Court will explain later in this report and recommendation, the Court will not recommend Plaintiff be awarded fees for work performed after the second remand, so this issue is not relevant to Plaintiff's claim for attorney fees.

      d. Plaintiff filed disciplinary complaints against Reliance's counsel with the state boards of professional responsibility in Tennessee, Pennsylvania, and New Jersey where counsel are licensed, and those claims were "promptly dismissed."

Plaintiff's counsel responds that, after consulting with disciplinary counsel for the Tennessee Board of Professional Responsibility, he concluded he had a duty under the Rules of Professional Conduct to report the situation involving what could have been an effort by Reliance "lawyer's" effort to spoliate or hide evidence (as reflected in an email exchange described above).

11

There is no evidence before this Court concerning these disciplinary complaints. Under these circumstances, the Court cannot conclude that Plaintiff's counsel acted in bad faith by making such reports.

Finally and perhaps most importantly, the Court finds that none of these complaints raised by Reliance bear on the question of either party's culpability *which led to the need to remand this case to Reliance a second time.* Consequently, the Court will not consider them either for or against Reliance. Instead, the Court has relied upon the reasons stated by the District Court in remanding this case a second time. And, as previously discussed, the Court finds that the culpability factor weighs in favor of Plaintiff.

### 2. RSL's ability to satisfy an award of attorney fees.

There is no dispute that Reliance has the ability to satisfy an award of attorney fees. This factor weighs in favor of Plaintiff.

### 3. The deterrent effect of an award on other persons under similar circumstances.

There is no evidence that Reliance was acting in bad faith when it failed to give Plaintiff a full and fair review after the First Remand. However, the Court *can* conclude that such failure was a result of negligence. Deterrence is not for bad faith conduct only; "there is [also] a strong interest in deterring negligent decision making" and in incentivizing plan administrators to review claims more carefully so as to provide a full and fair review. *Kennard v. Means Indus., Inc.*, No. 11-cv-15079, 2017 WL 3263431, at *3 (E.D. Mich. Aug. 1, 2017) (citing *Foltice v. Guardsman Prod., Inc.*, 98 F.3d 933, 937 (6th Cir. 1996) and *McKay*, 428 F. App'x at 546). The deterrence factor also weighs in favor of Plaintiff.

4. **Whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA.**

Plaintiff argues that the discovery he has obtained in this case has been used in other cases to show that Reliance "intentionally withholds certain emails from ERISA claim files." [Doc. 134, Pl.'s brief at Page ID # 4185]. The Court is aware of the Brunner/Dickerson email but is not specifically aware of other withheld emails. In any event, the purpose of this action was to obtain benefits for Beth Jordan.

This case is not a class action and does not implicate novel or significant legal questions regarding ERISA. Moreover, to the extent that all plan administrators may be encouraged to conduct more careful reviews of a disability claim, that issue has been discussed under the deterrence factor. The Court finds this factor weighs in favor of Reliance.

5. **The relative merits of the parties' positions.**

While Plaintiff did not succeed in obtaining benefits for the entire period that she sought, she did obtain partial benefits after the first remand. Defendant argues that Plaintiff would have received partial benefits had she just waited for the IME instead of filing an action in this Court. Whether Plaintiff's filing an action in this Court had any effect on Reliance's review of Plaintiff's claim after the first remand is impossible to determine. What is clear, however, is that Plaintiff obtained a second remand by presenting evidence which supported her claim and by showing that Reliance had failed to properly consider it. The Court concludes that this factor weighs slightly in favor of Plaintiff.

### 6. Consideration of all factors as a whole.

When considering all five factors as a whole, the Court concludes that it is appropriate to exercise its discretion to award Plaintiff *some, but not all*, of the fees she seeks. Plaintiff's success was limited and, as such, her fee recovery should also be limited. More specifically:

- With respect to work performed by Plaintiff's counsel before the first remand, the Court will recommend that Plaintiff's counsel recover fees for the work he necessarily had to perform regardless of whether his filing of the lawsuit preempted an IME which Reliance argues would have been conducted in due course. Whether or not the Court credits Reliance's argument, such work had to be done by Plaintiff to secure additional benefits for Plaintiff. Consequently, Plaintiff's counsel should be compensated for the work required to schedule the IME, to place the administrative record under seal, and to deal with various discovery matters.

- Fees incurred for legal work performed by Plaintiff's counsel during the time period from the first remand until the second remand also should be allowed because this work enabled Plaintiff to obtain the second remand.

- On the other hand, the Court will not recommend recovery for fees incurred after the second remand up to entry of judgment because that work did not result in any additional success for Plaintiff.

- Finally, the Court will recommend that Plaintiff's counsel recover fees for attorney time spent researching, writing, and otherwise preparing the Motion for Attorney Fees, as well as the initial brief and the subsequent reply brief, because that work has resulted in success for Plaintiff.

### C. The Lodestar Calculation of Fees

Under Section 1132(g), "'reasonable attorney fee awards are determined by the fee applicant's 'lodestar,' calculated by multiplying the proven number of hours worked by a court ascertained reasonable hourly rate.'" *Ciaramitaro*, 521 F. App'x at 437 (quoting *Ellison v. Balinski*, 625 F.3d 953, 960 (6th Cir. 2010)).

In determining the appropriate hourly rate to apply, the district court must consider the prevailing market rate in the relevant community for the same type of work at issue. *Adcock-Ladd v. Sec'y of Treasury,* 227 F.3d 343, 350 (6th Cir. 2000); *Reed v. Rhodes*, 179 F.3d 453, 473 (6th

14

Case 1:16-cv-00023-DCLC-CHS   Document 142   Filed 03/11/23   Page 14 of 19
PageID #: 4278

Cir. 1999); *Kennard*, 2017 WL 3263431, at *6. The "relevant community" for fee purposes is the legal community within the court's territorial jurisdiction. *Adcock-Ladd,* 227 F.3d at 350; *see also Kennard*, 2017 WL 3263431, at *6. The "prevailing market rate" is that rate which lawyers of comparable skill and experience can reasonably expect to command within the relevant community. *Id.* "The primary concern in an attorney fee case is that the fee awarded be reasonable, that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Adcock-Ladd*, 227 F.3d at 349 (citing *Reed*, 179 F.3d at 471); *see also Kennard*, 2017 WL 3263431, at *6 ("the appropriate rate 'is not necessarily the exact value sought by a particular firm, but is rather the market rate in the venue sufficient to encourage competent representation.'") (quoting *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 618 (6th Cir. 2007)).

Jeremy Bordelon, Plaintiff's primary counsel, is located in Portland, Oregon. He seeks $450.00 per hour for his work. Mr. Bordelon is an experienced, knowledgeable, and capable lawyer in the field of ERISA litigation. [*See* Doc.135, Decl. of J. Bordelon, Page ID ## 4191-4194]. In support of his requested rate, Mr. Bordelon has submitted the affidavits of two attorneys in Michigan and one located in New York who practice ERISA disability law. These attorneys, however, do not have experience practicing in the Eastern District of Tennessee. Mr. Bordelon argues that an ERISA practice is a national practice and, as such, the Court should look to the prevailing market rate that can be commanded nationally. In support, he cites mostly unpublished cases from other jurisdictions.[5] None of these cases are binding on this Court, and none pertain to this district. On the other hand, there is clear, binding precedent in this circuit that a court must use

---

[5] E.g., Plaintiff cites *Jeffboat, LLC v. Director, Office of Workers' Compensation Programs*, 553 F.3d 487, 490 (7th Cir. 2009); *Boxell v. Plan for Group Ins. of Verizon Commun., Inc*., 2015 WL 4464147 at *9 (N.D. Ind. July 21, 2015); *Amos v. PPG Indus., Inc.*, 2015 WL 4881459 at *9 (S.D. Ohio Aug. 13, 2015); *Frommert v. Conkright,*, 2016 WL 7186489 at *7 (W.D.N.Y. Dec. 12, 2016).

the prevailing market rate within its venue. Moreover, this district also has experienced and capable lawyers who practice in this field. Therefore, there is no need to go outside this district for capable representation in an ERISA case. The Court will look to this district for the prevailing market rate.

Unfortunately, Mr. Bordelon has not submitted affidavits from counsel within this district to support his requested hourly rate of $450.00. The Court notes, however, that Judge Varlan granted an hourly rate of $287.50 for work plaintiff's counsel performed in 2004 and 2005 in an ERISA disability case. *See Smith v. Bayer Corp. Long Term Disability Plan*, No. 3:04-cv-128, 2009 WL 676774, at *4-5 (E.D. Tenn. Mar. 11, 2009). Mr. Bordelon seeks compensation for work performed from 2016 to 2022. Rates have, of course, increased since 2004 and 2005. Further, this Court is familiar with the rates charged by attorneys in this district with similar experience and expertise in the field of ERISA litigation. Thus, the Court concludes that a rate of $350.00 per hour for work performed from 2016 to 2019 is appropriate in this district and that a rate of $375.00 is appropriate for work performed in 2020 to 2022 in this district. These rates are sufficient to attract competent counsel in this district but avoid producing a windfall for lawyers.

In using the lodestar method to calculate fees, the Court reminds counsel that attorney fee litigation should not become a second major litigation, and this Court is not expected to act as a "green eyeshade accountant" in reviewing fees. *See Fox v. Vice*, 563 U.S. 826, 838 (2011). The Court has reviewed the billing invoices and reached what it believes is a fair and reasonable accounting of hours for which fees can be awarded. "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.*

16

### 1. Jeremy Bordelon

Mr. Bordelon has provided billing records for his work which this Court has carefully reviewed. The Court has applied the parameters discussed in this report and recommendation and has calculated compensable fees for work performed by Mr. Bordelon as follows:

| Time Period When Fees Were Incurred | Hourly Rate | Number of hours | Award in Dollars |
|---|---|---|---|
| 2016-2019 | $350 | 105.6 | $36,960 |
| 2020-2022 | $375 | 30 | $11,250 |
| Total | | 127.4 | $48,210 |

### 2. R. Scott Wilson

The Court will also recommend recovery of fees for three hours of Mr. Wilson's time that was spent preparing for and attending a hearing on October 11, 2016, before this Court regarding discovery matters. The Court will not recommend recovery for the remaining 1.4 hours worked by Mr. Wilson because the work was either duplicative of Mr. Bordelon's work or the work occurred after the second remand. In October 2016, Mr. Wilson worked on this case as an associate in a firm specializing in ERISA law. The Court finds a rate of $300.00 an hour is appropriate for a total of $900.00

### 3. Paralegal Hours

Plaintiff seeks 33.5 hours of paralegal time at a rate of $125.00. Not all this work is recoverable, based on the parameters the Court has previously set for attorney fees—parameters which the Court finds appropriate to apply to paralegal fees. Further, there are some entries which do not appear to be for legal work, such as file maintenance, for which the Court will not award fees. The Court observes there are approximately 365 time entries in the time sheets submitted for paralegal work. In the interest of "rough justice" and to avoiding becoming a "green eyeshade accountant," the Court will simply divide the hours in half to award fees for 16.75 hours. As to the

rate of $125.00 per hour, the Court is familiar with the hourly rate for paralegals in this district and finds the rate of $125.00 per hour to be reasonable. The Court will recommend this rate. A rate of $125 per hour multiplied by 16.75 hours equals $2,093.75. The Court will recommend paralegal fees in the amount of $2,093.75.

### 4. Total Amount of Fee Award

In sum, the Court **RECOMMENDS** fees in the amounts as follows:

| J. Bordelon | $48,210 |
|---|---|
| R. Scott Wilson | $900.00 |
| Paralegals | $2,093.75 |
| Total Fees | $51,203.75 |

## IV. Conclusion

For the reasons stated herein, the Court finds that Plaintiff is eligible for attorney fees pursuant to 29 U.S.C. § 1132(g)(1), and that it is appropriate for this Court to grant a portion of the fees requested by Plaintiff. Accordingly, it is **RECOMMENDED**[6] that:

1. Plaintiff's Motion for Attorney Fees be **GRANTED IN PART** and **DENIED IN PART**.

2. Plaintiff be awarded fees in the amount of $51,203.75.

---

[6] Any objections to this Report and Recommendation must be served and filed within **SEVEN (7)** days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified constitutes a forfeiture of the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). Responses to timely filed objections must be filed within **SEVEN days** after service of a copy of the objections. The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).

Further, it is hereby **ORDERED** that the time period within which a party may object to this Report and Recommendation pursuant to Fed. R. Civ. P. 72 is hereby shortened to **SEVEN** days from service of this Report and Recommendation. Further, any response to said objections is also shortened to **SEVEN** days from service of the objections, if any.

**ENTER.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE